Clifford S. Davidson, OSB 125378
cdavidson@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
        *Attorneys for Defendant Terrance Bean*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| M.S.G., | Case No. 3:19-cv-325-HZ |
| Plaintiff, | Defendant Terrance Bean's |
| v. | SPECIAL MOTION TO STRIKE THE FIRST CLAIM FOR RELIEF PURSUANT TO ORS 31.150-31.152 |
| TERRANCE BEAN, | |
| Defendant. | Request for Oral Argument |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND FACTUAL BACKGROUND ................................................. 1

    A.     General Background ................................................................. 1

    B.     Summary of Anti-SLAPP Argument ................................................. 10

II.    OREGON'S ANTI-SLAPP STATUTE AND ITS TWO-PRONGED

    APPROACH .......................................................................... 12

III.    THE ROLE OF CALIFORNIA CASES IN DETERMINING WHETHER A

    CLAIM'S ALLEGATIONS ARISE FROM PROTECTED CONDUCT ..................... 14

IV.    <u>PRONG I</u>: THE FIRST CLAIM FOR RELIEF FALLS WITHIN THE ANTI-

    SLAPP STATUTE ................................................................... 14

V.    <u>PRONG II</u>: PLAINTIFF CANNOT SUSTAIN HIS BURDEN OF PRESENTING

    A PRIMA FACIE CASE ............................................................ 21

    A.     The Declaratory Judgment Claim Fails because Plaintiff's Allegations of
            Fraud in the Inducement and Bribery Fail as a Matter of Law ............................ 22

          1.     Fraud in the Inducement ......................................... 22

          2.     Bribery/Witness Tampering ....................................... 24

    B.     Plaintiff's Own Submission to the Oregon State Bar, a Public Record in
            Which He Sought Recompense for Deveny's Alleged Theft of Settlement
            Payments, Directly Contradicts His Allegations in This Lawsuit; Plaintiff
            Cannot Prevail and, at the Very Least, His Claims Are Implausible within
            the Meaning of Iqbal/Twombly ................................................. 25

    C.     Bean Was Entitled to Rely on Deveny's Apparent Authority ............................ 26

    D.     The Court Lacks Jurisdiction to Grant the Request for Declaratory
            Judgment Because There Is No Case or Controversy ................................ 26

CONCLUSION .......................................................................... 28

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
  56 U.S. 662 (2009) ........................................................................................................ 28

*Baral v. Schnitt*,
  1 Cal. 5th 376 (Cal. 2016) ........................................................................................... 24

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 28

*Camico Mut. Ins. Co. v. McCoy Foat & Co. CPAs, P.C.*,
  No. 3:18-cv-00701, 2018 U.S. Dist. LEXIS 154338 (D. Or. Sep. 6, 2018) ..................... 30

*Cheveldave v. Tri Palms Unified Owners Assn.*,
  27 Cal. App. 5th 1202 (Cal. Ct. App. Oct. 3, 2018) ....................................................... 20

*Church of Scientology v. Wollersheim*,
  42 Cal. App. 4th 628 (Cal. Ct. App 2001) ..................................................................... 23

*Deep Photonics Corp. v. LaChapelle*,
  282 Or. App. 533 (2016) .......................................................................................... 15, 19

*Dowling v. Zimmerman*,
  85 Cal. App. 4th 1400 (Cal. Ct. App. Jan. 9, 2001) ...................................................... 20

*Federici v. Lehman*,
  230 Or. 70 ...................................................................................................................... 26

*Glob. Exec. Mgmt. Sols. v. IBM*,
  260 F. Supp. 3d 1345 (D. Or. 2017) ............................................................................. 25

*Greco v. Greco*,
  2 Cal. App. 5th 810 (Cal. Ct. App. 2016) ..................................................................... 21

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

*Grudzien v. Rogers*,

    294 Or. App. 673, 432 P.3d 1169 (2018)........................................................ 29

*Handy v. Lane Cty.*,

    360 Ore. 605 (2016)........................................................................................ 15

*Hoag Living Tr. v. Hoag*,

    292 Or. App. 34 (2018).................................................................................. 25

*Horton v. Western Protector Ins. Co.*,

    217 Or. App. 443 (2008)................................................................................ 12

*Mullen v. Meredith Corp.*,

    271 Or. App. 698 (2015)................................................................................ 20

*Navarro v. IHOP Properties, Inc.*,

    134 Cal. App. 4th 834 (Cal. Ct. App. Nov. 7, 2005) ...................................... 21

*Navellier v. Sletten*,

    29 Cal. 4th 82 (Cal. 2002)............................................................................ 20

*Neumann v. Liles*,

    358 Or. 706 (2016)........................................................................................ 12

*Old Republic Constr. Program Group v. Boccardo Law Firm*,

    230 Cal. App. 4th 859 (Cal. Ct. App. Oct. 21, 2014) ................................ 21, 22

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,

    133 Cal. App. 4th 658 (Cal. Ct. App. 2005) .................................................. 23

*Plotkin v. State Accident Ins. Fund*,

    280 Or. App. 812 (2016)................................................................................ 23

*Schwern v. Plunkett*,

    845 F3d 1241 (9th Cir. 2017) ........................................................................ 12

*Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*,

    771 F.3d 632 (9th Cir. 2014) ......................................................................... 30

Page iii – DEFENDANT'S ANTI-SLAPP MOTION

*State v. Bailey*,

    346 Or. 551 (2009) ........................................................................................... 26

*Staten v. Steel*,

    222 Or. App. 17 (2008) ..................................................................................... 14

*Thayer v. Kabateck Brown Kellner LLP*,

    207 Cal. App. 4th 141 (Cal. Ct. App. 2012) ................................................... 22

*Venture Props. v. Parker*,

    223 Or. App. 321 (2008) ................................................................................... 25

*Wingard v. Oregon Family Council, Inc.*,

    290 Or. App. 518 (2018) ...................................................................... 12, 14, 23

*Young v. Davis*,

    259 Or. App. 497 (2013) ................................................................................... 23

**Statutes**

Cal. Code Civ. Proc. §§ 425.16-425.18 ................................................................. 13

Cal. Code. Civ. Proc. § 425.16(e)(2 ..................................................................... 18

ORS  31.150(1) .............................................................................................. 12, 27

ORS 135.703-135.709 ............................................................................................. 5

ORS 162.265 .......................................................................................................... 24

ORS 162.275 .......................................................................................................... 24

ORS 162.285 .......................................................................................................... 24

ORS 162.285(1)(a) ................................................................................................. 24

ORS 31.150(1) ....................................................................................................... 21

ORS 31.150(2)(b) ........................................................................................... passim

ORS 31.150(2)(d) ................................................................................................... 12

ORS 31.150(3) ....................................................................................................... 13

Page iv – DEFENDANT'S ANTI-SLAPP MOTION

ORS 31.150(4) ................................................................................................................ 13

ORS 31.150-31.155 ...................................................................................................... 1, 11

ORS 31.152(4) ................................................................................................................ 12

**Secondary Sources**

E. Rosenthal, "Second Thoughts on Mediation, A Trial Lawyer's View,"

    OSB Bar Bulletin (Feb./Mar. 2012), *available at*

    https://www.osbar.org/publications/bulletin/12febmar/mediation.html (accessed

    March 19, 2019) ........................................................................................................ 5

**Jury Instructions**

UCJI 42.06 .................................................................................................................... 23

**Constitutional Provisions**

U.S. Const. Art. III, § 2 ................................................................................................ 26

Page v – DEFENDANT'S ANTI-SLAPP MOTION

## CERTIFICATION PURSUANT TO LR 7-1(a)

Defendant made a good faith effort through telephone conference, and several emails, to resolve this dispute and has been unable to do so.

## MOTION

Pursuant to ORS 31.150-31.155, the "anti-SLAPP Law," defendant Terrance Bean ("Bean") moves to strike Plaintiff's First Claim for Relief. Plaintiff's First Claim for Relief arises solely from legally permissible, protected settlement conduct, and thus is subject to dismissal under the anti-SLAPP Law because Plaintiff cannot support his First Claim for Relief with "substantial evidence" as required by that statute.

## MEMORANDUM

## I.    INTRODUCTION AND FACTUAL BACKGROUND

### A.    General Background

Since autumn of 2018, Plaintiff has been obsessed with attempting to recover from Bean the money that Plaintiff's former attorney, Lori Deveny, allegedly stole from him. Bean had paid that money, pursuant to two settlement agreements, to resolve a civil lawsuit that Plaintiff was threatening to file in 2015.[1] In his efforts to be paid, Plaintiff went so far as to threaten Bean in writing that if Bean did not pay a second time, Plaintiff would speak with Detective Meyers—the lead detective on Bean's criminal matter whom Plaintiff, despite being the complainant in the criminal matter, described as an "asshole":

/ / /

/ / /

---

[1] To be clear, neither Settlement Agreement included an admission of guilt. *See* (Compl., Ex. C.) Given that a salacious allegation, even without merit, can have extremely negative impacts on the reputation and livelihood of a business leader and activist such as Bean, it is not uncommon for individuals to settle civil claims without an admission of liability or wrongdoing. (Ashton Decl. ¶¶ 2-3.)   In this case, the settlement agreements explicitly state that the documents *cannot* be construed as an admission or evidence of any civil or criminal claim. (Compl., Ex. C; Ashton Decl., ¶¶ 2-3.)

Page 1 – DEFENDANT'S ANTI-SLAPP MOTION

Hello ▢

My client paid the full amount you demanded to settle your civil claims.

DEREK J. ASHTON
Partner
Sussman Shank LLP
1000 SW Broadway, Suite 1400 | Portland, OR 97205
503.227.1111 main | 503.972.2522 direct | 503.248.0130 fax Email | Bio | Web | vCard


-----Original Message-----
From: ▢ [mailto: ▢ ]
Sent: Wednesday, January 09, 2019 3:03 PM
To: Derek J. Ashton <dashton@sussmanshank.com>
Subject: Yesterday's email

You asked me you email you. I haven't heard back. The Oregon bar didn't help me. If you can't help me, I'm going to that asshole Myers
to see if he can help.

Sent from my iPhone

(Ashton Decl., Ex. 10.)[2]

Plaintiff did not limit his efforts to email. Prior to making his September 20, 2018 email

demand, Plaintiff called the office of Bean's attorney and spoke with paralegal Kristin Eisenhauer.

Plaintiff informed Eisenhauer that Deveny had stolen his money, and repeatedly asked Eisenhauer

what Bean was "going to do for him." (Eisenhauer Decl. ¶ 2.) Eisenhauer suggested that Plaintiff

contact the Oregon State Bar (the "Bar"), but he said the Bar hadn't helped.[3] On September 24,

2018, Eisenhauer, along with attorney Derek Ashton, spoke with Plaintiff by phone again. Plaintiff

mentioned the theft of the settlement money, estimated that he'd received approximately $20,000

and said that he would produce bank statements substantiating this (he did not), and reiterated that

the Bar was not helping him. (Eisenhauer Decl. ¶ 3.) Plaintiff did not contact Bean's attorney again

until January 2019, when Plaintiff threatened to contact Detective Myers if Bean did not pay him

---

[2] Although Plaintiff revealed his last name at various points in his filings, Bean has redacted
Plaintiff's full name.  To the extent Plaintiff disputes the authenticity and/or his authorship of the
submitted exhibits, Bean reserves the right submit unredacted versions in light of Plaintiff's
waiver.

[3] Peculiarly, Plaintiff already had concluded that his efforts with the Bar had gone nowhere, even
though he submitted to the Bar an Application for Reimbursement only two weeks prior. (*See*
Request for Judicial Notice, Ex. 1 at 5.)

Page 2 – DEFENDANT'S ANTI-SLAPP MOTION

an unidentified sum of money to compensate him for Deveny's apparent theft.[4]

Despite his intentional threats and demands, Plaintiff remarkably now denies knowledge of the settlement agreements. (Compl. ¶¶ 11-12, 15.) Yet, in his Application for Reimbursement to the Bar, Plaintiff never alleges that Deveny entered into settlement agreements without his knowledge or consent. Rather, he simply seeks reimbursement for what Deveny stole from him:

2. **Information about the lawyer whose conduct caused your claim** *(also check box 10A on page 3):*
   a. Lawyer's Name _Lori E. Deveny_
   b. Firm Name _____
   c. Street Address _1020 SW Taylor St # 690_
   d. City, State, Zip: _Portland, OR 97205_
   d. Phone: _503-703-1061_
   e. Email: _ledeveny@att.net_

3. **Information about the representation:**
   a. When did you hire the lawyer? _November 14th 2014_
   b. What did you hire the lawyer to do? _represent me for any claims I may have against any person_
   c. What was your agreement for payment of fees to the lawyer? *(attach a copy of any written fee agreement)* _33% of any amount collected in event of settlement._
   d. Did anyone else pay the lawyer to represent you? _No_
   e. If yes, explain the circumstances *(and complete item 10B on page 3):*
   _____
   _____

   f. How much was actually paid to the lawyer? *(please attach proof of payment, if any)* $ _73,335.00_
   g. What services did the lawyer perform? _Negotiated a settlement for me. I was a minor at the time._

(Request for Judicial Notice "RJN," Ex 1.)

Indeed, in his sworn statement, Plaintiff told the Bar that Deveny "stole **my** money," and that his loss totaled $127,399.10, which he calculated based on "statements" he received from Deveny, dating back as early as March, 2017:

---

[4] Unbeknownst to Bean or his counsel at the time, Plaintiff's threat was dissembling. Plaintiff had already testified before a grand jury approximately one week prior. (RJN, Ex. 8.) To the extent this threat was an attempt to entrap Bean's attorney into committing a crime and/or malpractice, it did not work.

Page 3 – DEFENDANT'S ANTI-SLAPP MOTION

4. Information about your loss:

a. When did your loss occur?  August 29th, 2018

b. When did you discover the loss?  August 22nd, 2018

c. Please describe what the lawyer did that caused your loss  she stole my money.

d. Total amount of your loss  $ 127,399.10

e. How did you calculate your loss?  I have "statements"

f. Amount you are requesting to be reimbursed  $ 127,399.10

(RJN, Ex. 1 at 2, 7-10 [emphasis added].)

And, in response to the question "Has the lawyer admitted that he or she owes you money or has he or she agreed to repay you?," Plaintiff affirmed his understanding of the settlements, stating: "She owes me nothing because it's my money, shes not giving it to me & won't respond to my messages."

d. Has the lawyer admitted that he or she owes you money or has he or she agreed to repay you? *If yes, please explain:*  She owes me nothing because it's my money, shes not giving it to me & wont respond to my messages

(RJN, Ex. 1 at 2.)

Despite these admissions, Plaintiff has tried to find a way to collect from Bean the purported loss that he claims Deveny caused him. In doing so, Plaintiff has cobbled together a complaint, alleged entirely on "information and belief"[5] (Compl. ¶ 1), claiming that Bean somehow defrauded Plaintiff by (1) offering a civil compromise—pursuant to Oregon statutes— of the criminal matter in which Plaintiff was the complainant; (2) agreeing to pay $20,000 to resolve Plaintiff's asserted emotional distress damages in exchange for Plaintiff's agreement not to file a civil lawsuit until after the criminal matter had resolved; and (3) agreeing upon Plaintiff's

---

[5] The fact that Plaintiff alleges his own purported lack of knowledge "on information and belief" is telling. It is nonsense to claim that Plaintiff needed to be informed by someone other than himself of what Plaintiff knew at any given point. The true reason for Plaintiff's dissemblance is that he cannot allege, and his counsel cannot honestly certify under penalty of Fed. R. Civ. P. 11, that Plaintiff lacked knowledge of the settlement.

Page 4 – DEFENDANT'S ANTI-SLAPP MOTION

demand, and after the criminal matter concluded, to pay $200,000 to resolve civil claims that Plaintiff had threatened to file.

In order to reach Bean's deep pockets, Plaintiff predicates his theory on the following tortured logic: Bean's attempts to reach a civil compromise of the criminal case in response to Plaintiff's settlement demands (to which Plaintiff agreed and was presented in open court), and Bean's payments to resolve Plaintiff's threatened civil claims, caused Deveny to instruct Plaintiff to secrete himself from Oregon so as to avoid being compelled to testify in the criminal matter. Therefore, Plaintiff alleges, the settlement agreements constituted bribery and witness tampering, and the written agreements fraudulently concealed these purported motives.

The problem for Plaintiff is that the settlement agreements were nothing more than what they stated on their face. Pursuant to the plain text of those agreements, Plaintiff agreed to postpone filing his threatened civil suit until after conclusion of the criminal matter (whenever that would be) and, ultimately, after the criminal matter was concluded, agreed to settle Plaintiff's threatened civil claims. It is reprehensible to suggest otherwise without a shred of evidence, especially given that Plaintiff makes these serious allegations while falsely claiming no knowledge of the agreements.

Plaintiff's bald assertions of bribery, witness tampering and fraud lack even minimal merit. There is nothing unlawful about a defendant attempting to reach a monetary civil compromise with a complainant in a criminal case. In fact, Oregon law explicitly permits such compromises, *see* ORS 135.703-135.709, and such compromises are routinely utilized to globally resolve a complainant's threatened civil claims and related criminal charges. (RJN, Ex. 2 [Clackamas County matter in which the criminal defendant's Sex Abuse III charge was dismissed as a result of his civil compromise with the alleged sex abuse victim].)

Nor is there anything unlawful about attempting to resolve threatened civil claims for money. In fact, the vast majority of civil cases—even ones involving alleged personal injury—are resolved in this fashion. *See* E. Rosenthal, "Second Thoughts on Mediation, A Trial Lawyer's

Page 5 – DEFENDANT'S ANTI-SLAPP MOTION

View," OSB Bar Bulletin (Feb./Mar. 2012), *available at*

https://www.osbar.org/publications/bulletin/12febmar/mediation.html (accessed March 19, 2019)

(citing American Bar Association statistics indicating that only one to two percent of civil lawsuits

go to trial). And there is certainly nothing fraudulent about negotiating a settlement agreement

with a counterparty who demands certain settlement terms—as Plaintiff did here in May, 2015:

Dear Derek:

You asked that I outline our requirements related to the monetary and non-monetary terms of a proposed Civil Compromise. After spending some time with my client, those terms would be:

1. Your client would submit to testing for all sexually transmitted diseases at a location of my choosing, to be paid for by your client, with results coming directly to my office (a copy of the same results could also be sent to you or your client as you wish);
2. No contact between the parties;
3. Agreement to keep my client's identity confidential in perpetuity;
4. Payment of the sum of $500,000.00 into an irrevokable trust, with my client as the beneficiary (details of which to be worked out between the counsel at your office that handles your client's Estate and business interests and independent counsel for my client), primary drafting to be handled by your office; and
5. Confidentiality, mutual to both parties, to cover the terms of the agreement, with the exception for disclosure to the Court and District Attorney's office for purposes of obtaining dismissal of the criminal charges pending against your client in Lane County, with instructions to them that these terms are confidential.

Furthermore, once we reach an agreement, I will do whatever I can to persuade the Court to approve the Civil Compromise and bring this entire matter to conclusion.

While I understand the settlement vehicle we are discussing is a Civil Compromise in the context of the criminal case, please be advised that if the Court fails to approve a Civil Compromise,

Page 2 - letter to Derek J. Ashton

after we have reached an agreement, similar settlement terms will only remain "on the table" for two weeks after that disapproval, if any. After that time, we will be forced to file this as a civil Complaint and engage in full discovery.

I continue to believe there is a benefit to both of our clients to resolve this matter. I look forward to discussing this with you after you have had the opportunity to review our proposal.

Sincerely,

Lori E. Deveny
Attorney at Law

Page 6 – DEFENDANT'S ANTI-SLAPP MOTION

(Ashton Decl. ¶ 4 & Ex. 9.)

The essence of Plaintiff's claim is that the $20,000 and $200,000 settlement agreements – of which he inexplicably now denies any knowledge – were not for the purpose of resolving his threatened civil claims (as the agreements plainly state), but rather for the secret and unstated purpose of unlawfully compensating him for "secreting" himself from Bean's criminal proceedings. The baselessness of Plaintiff's allegations as a factual matter is clear from the court record of the criminal proceedings.

Contrary to Plaintiff's information-and-belief allegations, Bean's settlement efforts did not cause Plaintiff to avoid testifying at trial. Indeed, at the hearing on Bean's motion to dismiss the criminal case based on civil compromise, Deveny reported that Plaintiff had been actively telling prosecutors since the inception of this case that he had *no desire* to participate in the criminal prosecution:

> "There is – there's a lot that's been said about, Oh, he's [Plaintiff], he's just reluctant, oh, he's just embarrassed, oh, he just doesn't want to come but this is the right thing to do, and <u>what my client has found is that he's being offered to do something completely against his will</u>.
>
> He has been lied to by the primary investigating detective in this case. He has misled them, he has told them facts which are not entirely true, he has suggested that representing this victim in this way is somehow unethical or improper, and he has tried to marshal all forces to bring whatever pressure to bear on this young man who is adamant, he is not merely reluctant.
>
> [.....]

Page 7 – DEFENDANT'S ANTI-SLAPP MOTION

> [I]n the entirety of this matter he [Plaintiff] has made it clear from
> grand jury, from every time he's been contacted that he does not
> want to pursue this prosecution."

(RJN, Ex. 3, 16:3-17, 17:2-6 [emphasis added].)

At the final trial readiness hearing in the criminal matter on August 28, 2017, Deveny again reiterated that Plaintiff never wanted to participate in the criminal prosecution and had taken that position long before the parties even began discussing a potential civil compromise, and blamed the special prosecutor and lead detective for his unwillingness:

> "My client didn't want to testify at grand jury.  My client was outed
> by the detective in this case in the investigation of this matter,
> undermining his support system.
>
> He was then dragged up here, told he could not get counsel before
> grand jury because that would diminish the state's case and was not
> even allowed to consult an attorney until after he testified at grand
> jury.
>
> Since that time, he has made it perfectly clear to the prosecutor in
> the case that he has no interest in pursuing either of these cases[6].
> Regardless of the civil compromise that the Court has rejected, he
> had no interest at any time in any of the prosecutions.
>
> Based on the conduct of the detective in this case and the special
> prosecutor, my client attempted suicide.  My client threatened to kill
> himself in front of Mr. Healy [the special prosecutor] to demonstrate

---

[6] The criminal charges relating to Plaintiff's current civil claims involved Bean and Kiah Lawson. The reference to "these cases" by Deveny referred to the criminal cases against each defendant.

Page 8 – DEFENDANT'S ANTI-SLAPP MOTION

to Mr. Healy and get it through to him that he had no intention of testifying in this case.

<u>Did my client voluntarily meet with Mr. Healy?  Yes, he did, and at that meeting Mr. Healy threatened him with a material witness warrant.  Two days later when we met with Mr. Hasselman, it was clear that the Lane County district attorney's office would not allow that to happen, and while my client accepted service of the subpoena, he made it clear then and in multiple conversations since he has no intention of being here."</u>

(RJN, Ex. 4, 10:9-11:13 [emphasis added].)

Furthermore, the State itself acknowledged that Plaintiff met with prosecutors on more than one occasion and served him with a trial subpoena, but could not persuade him to testify:

"Although both Chief Deputy District Attorney Erik Hasselman and Deputy District Attorney Scott Healy <u>have separately met with the victim and his lawyer,</u> Lori Deveny, and made every attempt to convince him to testify, he has apparently decided not to appear and provide testimony in this case.  The victim <u>has been served with a subpoena in the State of Oregon to appear for trial commencing September 1, 2015 at 9:30 a.m</u>.  Through his counsel, he has indicated that he does not intend to appear voluntarily.  The State is unwilling to seek a material witness warrant to ensure his presence at trial."

(RJN, Ex. 5, pp. 1-2 [emphasis added].)

Plaintiff cannot rewrite history upon "information and belief" just because his attorney allegedly stole his settlement proceeds, which were paid in full nearly four years ago. There is no evidence Bean engaged in any wrongdoing, because he did not. In audaciously alleging otherwise,

Page 9 – DEFENDANT'S ANTI-SLAPP MOTION

Plaintiff ignores the fact that the July 20, 2015 settlement, which Deveny proposed (Ashton Decl. ¶ 5 & Ex. 9), plainly was intended to resolve Plaintiff's purported claim for emotional distress damages. (Compl. Ex. B at 3 ["release of any and all economic damage claims for past and future mental health evaluation and treatment . . . .].)  Plaintiff omits the fact that he, through his attorney and his mother acting as his guardian, is the one who proposed the settlement terms. (Ashton Decl., Ex. 9 at 1.) And, Plaintiff disavows knowledge of the settlement, despite his contrary representations to the Bar and admission in this very Complaint that he received at least $5,000 in settlement proceeds beginning in March 2016. (Compl. ¶ 16.)

In short: Plaintiff acknowledges the settlements when it suits him—for example, when asking the Bar for money and demanding Bean pay him a second time—and denies the settlements when doing so might benefit him—for example, when suing for $6,370,000 and trying to smear Bean's character to leverage a large money award.  Plaintiff's desperate attempts to mischaracterize the settlement solely upon "information and belief" in an effort to extort Bean for even more money must fail.

## B.    Summary of Anti-SLAPP Argument

Where a claim is premised upon purported statements and documents connected to an issue under consideration by a judicial body within the meaning of ORS 31.150(2)(b), that claim is subject to the anti-SLAPP Law. The plaintiff must muster admissible evidence in support of his claim falling under the statute, otherwise the Court must dismiss the relevant claim without prejudice and award attorney fees and costs to the defendant. In this case, the anti-SLAPP statute applies to the First Claim for Relief because it arises from attempts to settle actual and threatened court proceedings.

Plaintiff's declaratory judgment claim fails as a matter of law because Plaintiff fails to allege, and cannot prove, purported fraud, bribery or witness tampering; because even if a provision of the settlement agreements were unenforceable as a matter of public policy, there are severability provisions in those agreements; and because Plaintiff has not demonstrated that his

Page 10 – DEFENDANT'S ANTI-SLAPP MOTION

claim is ripe so as to invoke the Court's jurisdiction.

Plaintiff's First Claim for Relief also fails because he cannot satisfy his evidentiary burden in response to this motion. Publicly-available documents that the Plaintiff himself submitted to the Oregon State Bar, the record in the criminal court proceedings, and the correspondence attached to declarations filed concurrently with this memorandum, directly contradict Plaintiff's allegations. In the underlying criminal case, Plaintiff—through counsel—admitted on numerous occasions that he had expressed emphatically to prosecutors since the case's inception that he had no desire to participate in the criminal proceedings. (RJN, Ex. 3-4.) Moreover, on August 28, 2015, in its motion to dismiss the criminal case, the State represented that at least two prosecutors had "**met with the victim** and his lawyer, Lori Deveny, and made every attempt to convince him to testify," but that "he has apparently decided not to appear and provide testimony in this case" despite having "been served with a subpoena in the State of Oregon to appear for trial commencing September 1, 2015." (RJN, Ex. 5 at 1 [emphasis added].) Plaintiff thus communicated directly with prosecutors and informed them that he would not appear, despite having been served with a subpoena—an account that directly contradicts Plaintiff's allegation that he was the victim of an elaborate and confidential scheme to bribe him and secrete him from Oregon.

Even Plaintiff's own court pleadings demonstrate that his decision not to appear at the criminal trial was based on **Deveny's** advice and not anything Bean did or said. In his Complaint in this action, Plaintiff alleges:

| 16 | 11. |
|----|-----|
| 17 | Upon denial of the motion, DEVENY advised plaintiff and plaintiff's guardian that the |
| 18 | Agreement/Exhibit A required them to hide from the Lane County Prosecutor's office to avoid |
| 19 | service of a trial subpoena and furthermore, to absent themselves from the criminal trial. |

Plaintiff repeats this allegation in his Multnomah Circuit Court malpractice action against Deveny, which was filed several weeks after this action. (RJN, Ex. 6 at ¶ 12.)

For all of these reasons and additional ones discussed below, the Court should grant the

Page 11 – DEFENDANT'S ANTI-SLAPP MOTION

anti-SLAPP motion, dismiss the First Claim for Relief without prejudice, and award Bean attorney fees and costs upon noticed motion.

## II.    OREGON'S ANTI-SLAPP STATUTE AND ITS TWO-PRONGED APPROACH

In 2001, the Legislature enacted a statute to protect defendants from claims that chill speech-related conduct. Such lawsuits have been described as Strategic Lawsuits Against Public Participation, or "SLAPPs." The anti-SLAPP Law, codified as ORS 31.150-31.155 (as amended by 2009 c.449 § 1), "provides a mechanism for a defendant who is sued over certain actions taken in the public arena to have a questionable case dismissed at an early stage." *Wingard v. Oregon Family Council, Inc.*, 290 Or. App. 518, 521 (2018) (quotation marks omitted); *see Neumann v. Liles*, 358 Or. 706, 723 (2016) (anti-SLAPP statute provides for the dismissal of claims "before the defendant is subject to substantial expenses in defending against them.").[7]

ORS  31.150(1) outlines the anti-SLAPP procedure:

> "A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. The court shall grant the motion unless the Plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the Plaintiff will prevail on the claim. The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice. If the court denies a special motion to strike, the court shall enter a limited judgment denying the motion."

ORS 31.150(2) specifies four types of claims to which the anti-SLAPP procedure applies. Relevant

---

[7] Anti-SLAPP motions must be filed before an answer. *Horton v. Western Protector Ins. Co.*, 217 Or. App. 443 (2008). The denial of an anti-SLAPP motion is immediately appealable in both state and federal court because it is intended as an immunity from suit. ORS 31.152(4); *Schwern v. Plunkett*, 845 F3d 1241, 1242-44 (9th Cir. 2017) (holding that revised ORS 31.152(4) provides right to immediate interlocutory appeal if anti-SLAPP motion denied).

Page 12 – DEFENDANT'S ANTI-SLAPP MOTION

to this case are ORS 31.150(2)(b) and (d):

> "A special motion to strike may be made under this section against any claim in a civil action that arises out of:
>
> [. . . .]
>
> (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law; [or]
>
> [. . . .]
>
> (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

As the moving party, Bean has the initial burden of showing *prima facie* that the complaint, or any claim therein, "arises out of a statement, document or conduct" described in ORS 31.150(2). *See* ORS 31.150(3) (so stating).

If Bean makes this showing, then "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." ORS 31.150(3) (emphasis added). "Substantial evidence" means that a plaintiff "must submit sufficient evidence from which a reasonable trier of fact could find that the plaintiff met its burden of production." *Wingard*, 290 Or. App. at 523 (quoting *Handy v. Lane County*, 360 Or. 605, 622-23 (2016)). Prong 2 places the burden entirely on Plaintiff; Bean is not required to submit any further evidence. *Staten v. Steel*, 222 Or. App. 17, 30-31 (2008), *rev denied sub nom*, 345 Or. 618 (Jan. 13, 2009).

At both stages of the analysis (*i.e.*, Prongs 1 and 2), the Court is to consider "pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." ORS 31.150(4).

Page 13 – DEFENDANT'S ANTI-SLAPP MOTION

### III. THE ROLE OF CALIFORNIA CASES IN DETERMINING WHETHER A CLAIM'S ALLEGATIONS ARISE FROM PROTECTED CONDUCT

Oregon courts have not considered the specific issue of whether settlement agreements fall under the anti-SLAPP Law, though California courts have and those courts' holdings are authoritative to varying degrees. Oregon's anti-SLAPP Law was modeled on California's anti-SLAPP law, now codified as Cal. Code Civ. Proc. §§ 425.16-425.18. *Handy*, 360 Or. at 618-19; *Schwern*, 845 F.3d at 1244. Accordingly, the Oreogn Supreme Court has held that where the relevant wording of the Oregon and California anti-SLAPP laws are identical, Oregon looks to the California Supreme Court's decisions, dated prior to Oregon's 2001 enactment, for controlling interpretation, and to post-2001 cases "only for their persuasive value." *Handy*, 360 Ore. at 619 and n.12; *see Deep Photonics Corp. v. LaChapelle*, 282 Or. App. 533, 543 n.5 (2016). This memorandum discusses both Oregon and California cases bearing on whether the First Claim for Relief triggers the anti-SLAPP procedure.

### IV. <u>PRONG I</u>: THE FIRST CLAIM FOR RELIEF FALLS WITHIN THE ANTI-SLAPP STATUTE

The First Claim for Relief arises out of a statement "in connection with an issue under consideration or review by a . . . judicial body" within the meaning of ORS 31.150(2)(b). Plaintiff alleges as follows as relevant to the First Claim for Relief. Most of the allegations are against Deveny, Plaintiff's attorney, whom Plaintiff bafflingly chose not to join in this action. The claims against Bean are **emphasized** below:

- Paragraph 7: "On or about June 10, 2014, DEVENY advised Plaintiff and Plaintiff's guardian to enter into a Confidential Settlement Agreement, Release, Civil Compromise and Covenant Not To Sue. (<u>Exhibit A</u> and incorporated by reference)."

- Paragraph 8: "The Agreement was unlawful and void for public policy reasons for the following reasons [listing purportedly invalid terms]. . . ."

Page 14 – DEFENDANT'S ANTI-SLAPP MOTION

- Paragraph 9: "In adherence with DEVENY's negligent advice, Plaintiff's guardian signed the Agreement. Plaintiff did not sign the Agreement. The signature that appears on the June Agreement/Exhibit A above Plaintiff's initials is not Plaintiff's signature. There is sufficient information and belief to allege DEVENY forged Plaintiff's signature."

- Paragraph 10: "**On or about July 2, 2015 BEAN filed a Motion for Civil Compromise and moved the court to dismiss the pending Lane County criminal indictment enumerated as #20-14-23604. On or about July 20, 2015, the court denied BEAN'S Motion for Civil Compromise.**"

- Paragraph 11: "Upon denial of the motion, DEVENY advised Plaintiff and Plaintiff's guardian that the Agreement/Exhibit A required them to hide from the Lane County Prosecutor's office to avoid service of a trial subpoena and furthermore, to absent themselves from the criminal trial. **Unbeknownst to Plaintiff and Plaintiff's guardian, DEVENY entered further settlement negotiations with BEAN and his attorney, Derek Ashton ("ASHTON"). There is sufficient information and belief to allege that DEVENY and ASHTON negotiated a subsequent Agreement without Plaintiff's approval or consent. The second Agreement signed on or about July 20th was illusionary. The agreement states, in relevant part, that Plaintiff and Plaintiff's guardian agreed to forestall the filing of any civil suit until after the resolution of the criminal proceeding in consideration of $20,000. The actual purpose of the contract was to prevent Plaintiff's presence at BEAN'S criminal trial. BEAN and his representative provided $20,000 to DEVENY for the sole purpose to cover to expenses [sic] and incentive to [sic] Plaintiff's and Plaintiff's guardian to avoid service of the trial subpoena**

Page 15 – DEFENDANT'S ANTI-SLAPP MOTION

**and further void appearing as a witness at BEAN'S criminal trial."**

- Paragraph 12: "The July 20th agreement is attached as <u>Exhibit B</u> and incorporated by reference. There is sufficient information and belief to allege that DEVENY forged both Plaintiff's signature and Plaintiff's guardian's signature. DEVENY did not disclose the second Agreement/Exhibit B to Plaintiff and Plaintiff's guardian[.]"

- Paragraph 13: "DEVENY then hid and secreted Plaintiff and Plaintiff's guardian in various places in Oregon until the criminal trial date (and ultimate dismissal) of the pending Lane County criminal case."

- Paragraph 15: "**When the Lane County criminal case was dismissed, BEAN'S attorney and DEVENY entered into a third Agreement. This Agreement is attached as Exhibit C and is incorporated by reference.** The third Agreement purports to be signed by Plaintiff and Plaintiff's guardian on or about September 2nd. There is sufficient information and belief to allege that DEVENY did not receive Plaintiff's or Plaintiff's guardian's permission to enter into negotiations for the third agreement/Exhibit C and did not receive Plaintiff's or Plaintiff's guardian['s] permission to complete the third agreement. There is sufficient information to allege that DEVENY forged Plaintiff's and Plaintiff's guardian's signature on the September settlement Agreement/Exhibit C."

- Paragraph 19: "Plaintiff is unable to tender the $220,000 offered by BEAN because BEAN's consideration was taken by DEVENY and without fault to Plaintiff or Plaintiff's guardian. See *Jones v. McGinn*, 70 Or 236 (1914)."

- Paragraph 22, in summary, states that Deveny executed the second and third settlements by fraudulently representing to Plaintiff that the settlements were "waivers" of (unfiled) civil claims when, in fact, its purpose was to

Page 16 – DEFENDANT'S ANTI-SLAPP MOTION

tamper with, or bribe, a witness; and Deveny did not have Plaintiff's permission to sign the settlements.

- Paragraph 23: **"Defendant BEAN knew that [Deveny's] representations [that the settlements were releases of civil claims] were false and that the agreements were illusionary [sic], unlawful and unenforceable. Plaintiff was ignorant of this falsity and rightfully relied on the truth of the representations made by BEAN, ASHTON and DEVENY."**

- Paragraph 26: "The purpose of Exhibit B was to secret[e] Plaintiff from the prosecutor and compel his disobedience with a criminal subpoena to testify at trial. The purpose of Exhibit B was to bri[b]e Plaintiff into not testifying at BEAN'S criminal trial. Exhibit B documents the crime of ORS 162.265 Bribing a Witness. Exhibit B is unenforceable."

- Paragraph 27: "The purpose of Exhibit C was to compensate Plaintiff and DEVENY for their participation in Exhibit B. The purpose of Exhibit C was to disguise the exchange of money and crime of ORS 162.265 Bribing a Witness. Exhibit C is unenforceable."

The entirety of the conduct alleged against Bean in the First Claim for Relief thus comprises:

1.  Bean concluded a statutorily-permitted civil compromise of the criminal case with Plaintiff;

2.  Bean filed a motion for civil compromise in the criminal case, which was denied;

3.  Bean later paid money in settlement of Plaintiff's threatened civil litigation;

4.  The payment was actually an attempt to persuade Plaintiff to secrete himself from the jurisdiction; and

Page 17 – DEFENDANT'S ANTI-SLAPP MOTION

5. Bean somehow made representations to Plaintiff concerning the nature of the settlement agreements, despite the fact that Plaintiff had counsel, and Plaintiff now denies knowledge of those agreements.

The plain text of ORS 31.150(2) indicates that the First Claim for Relief falls under the anti-SLAPP statute. The claim "arises out of . . . any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a . . . judicial body or other proceeding authorized by law."

The heart of the First Claim for Relief is Plaintiff's assertion that Deveny misrepresented the nature of the Civil Compromise and Settlement Agreements when describing them to Plaintiff, Bean knew of those misrepresentations, and that Plaintiff relied on Deveny's purported misrepresentations to his detriment. (*See* Compl. ¶ 23.) Even if Bean had made actionable misrepresentations, which he did not, or somehow could be held responsible for Plaintiff's reliance on his own counsel's advice, which he cannot, claims based on such conduct "arise out of" conduct protected by ORS 31.150(2)(b). *Cf. Deep Photonics Corp.*, 282 Or. App. at 547 (affirming denial of anti-SLAPP motion because Plaintiff's claim arose out of "garden variety" legal malpractice and not any statement by the attorney-defendant's "act of advising DPC to bring a lawsuit," which is protected activity).

Although neither any Oregon appellate court, nor this Court, has considered whether claims arising from the act of settling a case fall under ORS 31.150(2)(b), California courts have held that they do fall under California's equivalent, Cal. Code. Civ. Proc. § 425.16(e)(2). As early as 2001, the year Oregon enacted its anti-SLAPP statute, the California Court of Appeal held that a misrepresentation claim arose from conduct protected by California's equivalent of ORS 31.150(2)(b) where the purported misrepresentations were made during the negotiation of a settlement. *Dowling v. Zimmerman*, 85 Cal. App. 4th 1400, 1420 (Cal. Ct. App. Jan. 9, 2001).

One year after Oregon enacted its anti-SLAPP statute, the California Supreme Court

Page 18 – DEFENDANT'S ANTI-SLAPP MOTION

decided *Navellier v. Sletten*, 29 Cal. 4th 82 (Cal. 2002).[8] The plaintiffs in that case sued the defendant for "fraud in misrepresenting his intention to be bound by the Release . . . ." *Id.* at 87. The trial court denied the defendant's anti-SLAPP motion on the grounds that the claims did not arise from protected conduct, *id.* at 95, and the Court of Appeal affirmed. The California Supreme Court reversed because, among other reasons, the plaintiffs' fraud claim was grounded in purported misrepresentations and omissions in connection with the release, the defendant's actions in signing the release, and the defendant's "failure to disclose that he was secretly not in agreement with the terms of the Release . . . ," and therefore arose from activity protected by California's equivalent of ORS 31.150(2)(b). *Id.* at 89.

In more recent decisions, California appellate courts have held that attempts to void settlement agreements arose from conduct protected by California's anti-SLAPP statute. *Cheveldave v. Tri Palms Unified Owners Assn.*, 27 Cal. App. 5th 1202, 1214 (Cal. Ct. App. Oct. 3, 2018), *rev. denied*, S252525, 2019 Cal. LEXIS 829 (Cal. Jan. 16, 2019) (holding that claim for declaratory relief, which sought to void settlement agreement due to defendant's purported lack of authority to enter into agreement, arose from conduct falling under California anti-SLAPP statute); *Navarro v. IHOP Properties, Inc.*, 134 Cal. App. 4th 834, 841-842 (Cal. Ct. App. Nov. 7, 2005), *rev. denied*, S140232, 2006 Cal. LEXIS 1969 (Feb. 1, 2006) (relying on *Dowling* to dismiss the plaintiff's claims concerning fraudulent statements made in the context of a negotiated stipulated judgment).[9]

---

[8] Our Court of Appeals has cited *Navellier v. Sletten* favorably in the anti-SLAPP context. *Mullen v. Meredith Corp.*, 271 Or. App. 698, 705 n.2 (2015). However, *Mullen* did not involve a settlement agreement and considered a different subsection of Oregon's anti-SLAPP motion, ORS 31.150(2)(d).

[9] The California Court of Appeal also has held more generally that claims for constructive fraud alleging misrepresentations in connection with pursuing litigation fall under California's equivalent of ORS 31.150(2)(b). *Greco v. Greco*, 2 Cal. App. 5th 810, 825-26 (Cal. Ct. App. 2016). The *Greco* court further noted that a statement in connection with litigation falls under California's anti-SLAPP statute "if it relates to the substantive issues in the litigation and is directed to persons

Page 19 – DEFENDANT'S ANTI-SLAPP MOTION

Of particular note is *Old Republic Constr. Program Group v. Boccardo Law Firm*, 230 Cal. App. 4th 859 (Cal. Ct. App. Oct. 21, 2014), *rev. denied*, S222819, 2015 Cal. LEXIS 738 (Feb. 11, 2015). The plaintiff in that case alleged that the defendant's law firm wrongfully withdrew funds deposited by the plaintiff in settlement of an earlier-filed personal injury lawsuit. The plaintiff had filed a motion for apportionment of settlement proceeds, but withdrew that motion and dismissed its complaint with prejudice, which "meant that there was no longer any pleading before the court seeking affirmative relief." *Id.* at 864. After providing notice to the plaintiff, the law firm disbursed to its injured client the settlement funds from its trust account. *Id.* In response, Old Republic filed a complaint alleging fraudulent inducement with respect to the settlement agreement, among other causes of action. *Id.* at 865. The Court of Appeal affirmed the trial court's denial of the anti-SLAPP motion with respect to the non-fraud causes of action. *Id.* at 869. The court's discussion of the difference between Old Republic's fraudulent inducement claim, and its non-fraud claims, is instructive here:

> "The causes of action at issue here refer to, and may depend on, defendants' having entered into the stipulation, which was itself protected conduct; but they do not assert that there was anything wrongful about that conduct. In this regard the three causes of action now before us differ from the fraud cause of action, as to which the trial court granted the SLAPP motion. As the court recognized, that cause of action "[arose] from the stipulation." The underlying wrongful conduct was defendants' alleged *entry into the stipulation* without the intention to be bound by it, thereby inducing Old Republic to do likewise and depriving it of control over the settlement funds. With respect to the remaining three claims,

having some interest in the litigation." *Id.* at 825.

Page 20 – DEFENDANT'S ANTI-SLAPP MOTION

> however, there was nothing wrongful about the stipulation itself;
>
> entry into it <u>is not the injurious conduct alleged</u>."

*Id.* (emphasis added.)

Unlike in *Old Republic*, Plaintiff's First Claim for Relief alleges that <u>entering</u> into the Civil Compromise and the Settlement Agreements comprises wrongful conduct that gives rise to Plaintiff's claims. And to the extent Plaintiff rests his claims upon the purported settlement-related conduct of Bean's attorney, any claims made on such a basis also are subject to the anti-SLAPP statute. *See Thayer v. Kabateck Brown Kellner LLP*, 207 Cal. App. 4th 141, 153-54 (Cal. Ct. App. 2012).

Plaintiff's First Claim for Relief is subject to ORS 31.150(2)(b). Thus, the burden shifts to Plaintiff to present admissible evidence in support of a *prima facie* case – a burden Plaintiff cannot sustain.

## V.    <u>PRONG II</u>: PLAINTIFF CANNOT SUSTAIN HIS BURDEN OF PRESENTING A *PRIMA FACIE* CASE

In order to prevent dismissal of the First Claim for Relief, Plaintiff must show a probability of prevailing on that claim. ORS 31.150(1). Plaintiff must satisfy his burden of production. *Wingard*, 290 Or. App. at 523; *Plotkin v. State Accident Ins. Fund*, 280 Or. App. 812, 826 (2016) (noting that anti-SLAPP motions require a summary judgment-like showing). He may do so only through admissible evidence. *Young v. Davis*, 259 Or. App. 497, 508 (2013).

Plaintiff's burden includes rebutting any affirmative defenses. ORS 31.150(4) (court considers facts upon which a defense is based); *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 658 (Cal. Ct. App 2001) (in anti-SLAPP context, defenses are to be considered if necessary in determining Plaintiff's probability of success once the plaintiff has presented evidence of the probability of success); *see Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 676 (Cal. Ct. App. 2005) ("Generally, a defendant [filing an anti-SLAPP motion] may defeat a cause of action by showing the plaintiff cannot establish an

Page 21 – DEFENDANT'S ANTI-SLAPP MOTION

element of its cause of action or by showing there is a complete defense to the cause of action . . . .")

Although no Oregon court appears to have considered the issue, persuasive California law interpreting identical statutory language holds that where a claim contains some allegations protected by the anti-SLAPP statute, and others not protected by that statute, a Plaintiff must meet his burden with respect to allegations arising from the protected activity. Otherwise, those allegations are removed from the complaint. *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (Cal. 2016).

The burden is entirely on Plaintiff to make out a *prima facie* case regarding each element of his claims. However, so as to provide fair notice, Bean sets forth below some of the facts and arguments relevant to Prong II. Bean reserves the right to present additional facts and arguments in his reply.

## A.  The Declaratory Judgment Claim Fails because Plaintiff's Allegations of Fraud in the Inducement and Bribery Fail as a Matter of Law

Plaintiff rests his declaratory relief claim on the purported unenforceability of the two agreements to settle the unfounded civil claims Plaintiff was threatening to file against Bean in 2015. Plaintiff asserts that the settlement agreements are unenforceable because of purported fraud in the inducement; because the purpose of the July 20, 2015 Agreement was "to secret[e] Plaintiff from the prosecutor and compel his disobedience with a criminal subpoenas" and to bribe Plaintiff into not testifying at Bean's criminal trial"; and because the "purpose of Exhibit C was to disguise the exchange of money and crime of ORS 162.265 Bribing a Witness. Exhibit C is unenforceable." (Compl. ¶¶ 22-27.)

### 1.  Fraud in the Inducement

Plaintiff's fraud in the inducement theory fails because Plaintiff fails to allege any representation of fact by <u>Bean</u> beyond the texts of the settlement agreements themselves – a necessary element of Plaintiff's claim. In order to prevail on a fraudulent inducement claim, a Plaintiff must plead and prove evidence of misrepresentations beyond the agreements at issue,

Page 22 – DEFENDANT'S ANTI-SLAPP MOTION

*Hoag Living Tr. v. Hoag*, 292 Or. App. 34, 49-50 (2018), and produce clear and convincing evidence entitling him to rescission, *Venture Props. v. Parker*, 223 Or. App. 321, 349 (2008). Plaintiff has not alleged that Bean did not intend to hold up his end of the bargain. To the contrary, Plaintiff admits that Bean performed as promised by paying the amounts agreed to in the two settlements. Plaintiff thus fails to identify any actionable purported misrepresentation.

Further, Plaintiff has not alleged—and cannot prove—that it was reasonable for him to rely on the purported (and unidentified) representations of Bean, as opposed to the advice of his attorney and his own mother as guardian. *See Glob. Exec. Mgmt. Sols. v. IBM*, 260 F. Supp. 3d 1345, 1383 (D. Or. 2017) (Hernández, J.) (Plaintiff must prove a right to rely on the purported misrepresentation); UCJI 42.06 ("In determining whether the Plaintiff's reliance on the statements of the defendant was reasonable, you must consider the totality of the parties' circumstances and conduct."). Indeed, in his malpractice lawsuit against Deveny, Plaintiff states that it was Deveny's advice that caused him to go into hiding, and that "Ms. Deveny did not consult with Plaintiff or Plaintiff's guardian before entering into the agreement." (RJN, Ex. 6 at ¶ 12.)

And, as discussed above in the introduction, the State has declared under penalty of perjury that prosecutors <u>met</u> with Plaintiff and Deveny weeks before the criminal trial was set to begin— after Plaintiff now claims he hid himself upon Deveny's advice—and he was served with a trial subpoena in the criminal matter but told the prosecutors that he would not testify. (RJN, Ex. 5 at 1-2.)

Finally, although Plaintiff claims Deveny stole the bulk of the settlement money Bean paid for the benefit of Plaintiff, Plaintiff did receive some of that money—somewhere between $5,000 and $30,000 since March 2016. (RJN, Ex. 1.) Plaintiff has not tendered, or offered to tender, the amount he has received; his rescission claim therefore fails. *See Federici v. Lehman*, 230 Or. 70, 73 (1962) (to prevail on his rescission claim, a plaintiff must "tender back what he has received under the contract or so some legal excuse for his failure").

For the foregoing reasons, Plaintiff cannot produce substantial evidence supporting fraud

Page 23 – DEFENDANT'S ANTI-SLAPP MOTION

in the inducement or rescission of the settlement agreements from which he has benefitted.

   2.    **Bribery/Witness Tampering**

   Plaintiff claims that the July 20, 2015 Settlement comprised an attempt to prevent him from testifying, but that is patently false based on a review of the text of that agreement. There is nothing in that agreement conditioning payment on not testifying. Plaintiff should not be allowed to suggest otherwise and smear Bean without a modicum of evidence to support his claim.

   Plaintiff further claims that the September 2, 2015 Settlement comprised witness tampering (ORS 162.285) or bribery of a witness (ORS 162.265). These claims fail as a matter of law. First, even if the allegations in Plaintiff's Complaint were true, which they are not, they do not give rise to witness tampering:

> "It is not a violation of [ORS 162.285] to persuade a witness to lawfully refuse to testify on grounds of personal privilege or to induce a witness to avoid process by leaving the jurisdiction of the court . . . [N]either the means used nor the end sought is independently unlawful. Oregon Criminal Law Revision Commission, *Proposed Oregon Criminal Code, Final Draft and Report* § 203, Commentary (A) (July 1970)."

*State v. Bailey*, 346 Or. 551, 557, n.2 (2009) (quoting the foregoing in the context of analyzing ORS 162.285(1)(a)). To that end, Plaintiff's unfounded allegations are further thwarted by the fact that there was no action pending at the time of the September 2 Settlement. The criminal case had been dismissed upon the State's dismissal motion filed on August 28, 2015. (RJN, Exs. 5, 8.) The absence of a pending criminal proceeding precludes violations of both ORS 162.285(1)(b) and ORS 162.265.[10]

---

[10] For those same reasons, Plaintiff need not worry that he has committed "bribe receiving by a witness," which would make it a Class C Felony for Plaintiff to have solicited or agreed to accept, in connection with the criminal proceeding, any pecuniary benefit upon agreement or understanding that he would avoid legal process summoning him to testify, or be absent from a proceeding to which he was legally summoned.  ORS 162.275.

Page 24 – DEFENDANT'S ANTI-SLAPP MOTION

Given that the parties had already agreed to terms in connection with the Civil Compromise, the parties used the Civil Compromise as a template in creating the September 2, 2015 Settlement. (Ashton Decl. ¶ 8.) To the extent that the September 2 Settlement contained a "no-testimony" provision that was valid in the context of a civil compromise, but potentially invalid in the context of settling an unfiled civil claim and included as an artifact from a prior settlement document, the "no-testimony" provision is severable from the rest of the agreement.

**B.      Plaintiff's Own Submission to the Oregon State Bar, a Public Record in Which He Sought Recompense for Deveny's Alleged Theft of Settlement Payments, Directly Contradicts His Allegations in This Lawsuit; Plaintiff Cannot Prevail and, at the Very Least, His Claims Are Implausible within the Meaning of *Iqbal/Twombly***

Plaintiff falsely claims he was unaware of the settlement agreements. Not only does plaintiff in this very Complaint acknowledge receipt of settlement proceeds as early as March 2016, (Compl., ¶ 19), on September 6, 2018, he submitted a Client Security Fund Application for Reimbursement with the Bar (the "OSB Submission") reimbursement of $127,399.10—*i.e.*, the settlement proceeds Deveny allegedly stole. (RJN, Ex. 1.)

The OSB Submission required Plaintiff to swear or affirm that his responses were accurate to the best of his knowledge or belief, and he did so. (RJN, Ex. 1 at 3.)  In that application, he admitted he agreed to pay to Deveny "33% of any amount collected in event of settlement," and expressly acknowledging the $220,000 settlement amount by conceding that Deveny "[n]egotiated a settlement for me" and her share settlement was $73,335.00. (RJN Ex. 1 at 1.)

At no point, until Deveny allegedly stole Plaintiff's money, did Plaintiff attempt to void or rescind either of the settlements. On the contrary, Plaintiff gladly accepted thousands of dollars in settlement proceeds starting in March 2016, and repeatedly asked that Bean compensate him for Deveny's alleged theft. It is disingenuous for Plaintiff to now suggest that there is "sufficient information and belief to allege" that he was unaware of the settlement agreements. (Compl. ¶ ¶ 11, 12, 15.) Indeed, his "information and belief" allegation is baffling given that Plaintiff also

Page 25 – DEFENDANT'S ANTI-SLAPP MOTION

alleges the agreements were "illusionary" and not for their stated purpose.

A complaint must allege sufficient facts to support each element of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A complaint that does not state a "plausible claim for relief" does not survive a motion to dismiss, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), or an anti-SLAPP motion in which claims must be substantiated with admissible evidence. Based on his OSB filings, it is clear that Plaintiff knew he settled his threatened civil claims with Bean for $220,000, and that Plaintiff was satisfied with the settlement while he was receiving installment payments from it via his attorney. He cannot argue otherwise based only on "information and belief" and satisfy the pleading requirements as set forth in *Iqbal/Twombly*.

## C.    Bean Was Entitled to Rely on Deveny's Apparent Authority

Plaintiff's First Claim for Relief fails to the extent Plaintiff seeks to hold Bean accountable for Deveny's purported lack of authority to enter into the settlement agreements. Even if it were true that Deveny lacked actual authority, Bean was entitled to rely on her apparent authority to act on Plaintiff's behalf. *Grudzien v. Rogers*, 294 Or. App. 673, 432 P.3d 1169, 1174 (2018) (if the client makes statements or engages in conduct objectively indicating that the attorney has authority to accept a settlement offer on the client's behalf, then the attorney has at least apparent authority to do so and the client will be bound by the settlement to which the attorney agrees.) Plaintiff cannot supply any evidence to show that Bean knew or should have known that Deveny lacked authority to act on Plaintiff's behalf, or that Deveny did not in fact provide Plaintiff with his share of the settlement monies that Bean already paid in full.

## D.    The Court Lacks Jurisdiction to Grant the Request for Declaratory Judgment Because There Is No Case or Controversy

Plaintiff's request for declaratory relief presents no justiciable controversy. U.S. Const. Art. III, § 2 (the court may only adjudicate *actual* cases or controversies). Plaintiff cannot publicly make disparaging statements regarding Bean upon "information and belief" merely to obtain an

Page 26 – DEFENDANT'S ANTI-SLAPP MOTION

advisory opinion of this Court. Rather, Plaintiff must present "a substantial controversy between the parties having adverse legal interests that is sufficiently immediate to warrant the issuance of declaratory relief." *Camico Mut. Ins. Co. v. McCoy Foat & Co. CPAs, P.C.,* No. 3:18-cv-00701, 2018 U.S. Dist. LEXIS 154338, at *5 (D. Or. Sep. 6, 2018) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Plaintiff presents no such controversy or immediate legal interest.

If the Court grants Plaintiff the relief he seeks (a declaration that the agreements are rescinded and void for public policy), then the parties will be in the *exact* same place they are today: (1) Plaintiff will continue to treat the settlement agreements as though they do not exist, and (2) Bean will already have performed his obligations under the agreements in that he tendered payment nearly four years ago. That is, Plaintiff does not claim that the existence of the agreements precludes him from taking any action, nor does he seek to enjoin Bean from his performance under the Contract. At this time, any ruling as to the validity and/or enforceability of the settlement agreements is advisory and unripe. *Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (the parties' adverse legal interests must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). Plaintiff's First Claim for Relief does not sufficiently allege a present case or controversy, therefore Plaintiff cannot prevail on that claim because the Court lacks jurisdiction.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 27 – DEFENDANT'S ANTI-SLAPP MOTION

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the First Cause of Action without prejudice pursuant to ORS 31.150(1).

Dated this 6th day of May, 2019.

SUSSMAN SHANK LLP

By: /s/ Clifford S. Davidson
    Clifford S. Davidson, OSB No. 125378
    *Attorneys for Defendant Terrance Bean*

Page 28 – DEFENDANT'S ANTI-SLAPP MOTION