IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

M.S.G.,            No. 3:19-cv-00325-HZ

         Plaintiff,            OPINION & ORDER

   v.

TERRANCE BEAN,

         Defendant.

Sean J. Riddell
Chris Mascal
2095 NE Broadway Street
Portland, OR 97232

      Attorneys for Plaintiff

Clifford Davidson
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205

      Attorney for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff M.S.G. brings one claim for declaratory relief to rescind or void two prior settlement agreements and one claim for sexual battery under Or. Rev. Stat. § 163.315(1)(a).[1] Defendant Terrence Bean moves to strike Plaintiff's claim for declaratory relief pursuant to Oregon's anti-SLAPP statute. The Court denies Defendant's motion to strike.

## BACKGROUND

Plaintiff M.S.G. alleges that on September 27, 2013, Defendant engaged in sexual relations with Plaintiff. Notice of Removal Ex. 1 ("Compl.") ¶ 4. At the time, Plaintiff was 15 years old. Compl. ¶ 5. A year later, Defendant was indicted in Lane County, Oregon, for two counts of Sodomy in the Third Degree and one count of Sexual Abuse in the Third Degree. Compl. ¶ 6.

In June 2015, Plaintiff's attorney, Lori Deveny, advised Plaintiff and his guardian to enter into a "Confidential Settlement Agreement, Release, Civil Compromise and Covenant Not To Sue" ("Civil Compromise"). Compl. ¶ 7, Ex. A. That agreement: (1) "forbade [Plaintiff] from testifying in any criminal proceeding against [Defendant] related to the events of September 27, 2013"; (2) "forbade [Plaintiff] from ever asserting or testifying that [Defendant] engaged or attempted to engage in criminal and/or unlawful activity related to the events of September 27, 2013"; and (3) "required [Plaintiff] to release [Defendant] of all criminal conduct[] by [Defendant] that was known and unknown to [Plaintiff]." Compl. ¶ 8. Plaintiff alleges that only his guardian signed the agreement and that Deveny forged Plaintiff's signature on the agreement.

---

[1] In his Complaint, Plaintiff also brought a claim for abuse of a vulnerable person under state law. Plaintiff voluntarily dismissed that claim on June 28, 2019. Notice of Dismissal, ECF 16.

Compl. ¶ 9. On July 2, 2015, Defendant filed a motion for civil compromise and to dismiss the pending criminal indictment. Compl. ¶ 10. The trial court denied the motion. Compl. ¶ 10.

Plaintiff alleges that Deveny advised Plaintiff and his guardian that the Civil Compromise required them to hide from the prosecutor's office to avoid being subpoenaed to testify in the criminal trial. Compl. ¶ 11. Plaintiff asserts that unbeknownst to him or his guardian and without their consent, Deveny then conducted additional settlement negotiations with Defendant and his attorney, and Deveny agreed to a civil settlement ("First Settlement Agreement") on Plaintiff's behalf. Compl. ¶ 11. The First Settlement Agreement provides that, in exchange for $20,000, Plaintiff would (1) forestall filing a civil lawsuit against Defendant until after the criminal proceeding against Defendant concluded, and (2) release his claim for economic damages against Defendant. Compl. ¶ 11, Ex. B at 1.

The First Settlement Agreement is dated July 20, 2015. Compl. ¶¶ 11-12. Like the Civil Compromise, Plaintiff alleges that Deveny forged Plaintiff and his guardian's signatures. Compl. ¶ 12. Plaintiff claims that, following Deveny's advice and with her assistance, he hid from prosecutors in various locations throughout Oregon and California until the State dismissed its criminal charges against Defendant. Compl. ¶ 13; M.S.G. Decl. ¶¶ 4-5.

On August 28, 2015, the prosecutor moved to dismiss the criminal charges against Defendant without prejudice because Plaintiff refused to testify. Req. Jud. Notice ("RJN") Ex. 5 at 1, ECF 7. The deputy district attorney and investigator separately met with Plaintiff and his attorney to convince him to testify, but Plaintiff refused. *Id.* at 1. Plaintiff indicated that he was unwilling to appear voluntarily, and the state decided not to seek a material witness warrant to compel his testimony at trial. *Id.* at 1-2. The Lane County Circuit Court dismissed Defendant's criminal case without prejudice on September 1, 2015. RJN Ex. 7.

The next day, on September 2, 2015, another civil settlement agreement ("the Second Settlement Agreement") was executed. Compl. ¶ 15, Ex. C. It provides that the parties "desire[d] to release and settle all the claims, including all claims – civil and/or criminal – that were or could have been asserted related to the events of September 27, 2013, fully and finally[.]" Compl. Ex. C at 2. It also provided that Plaintiff would never "claim, assert, or testify that [Defendant] engaged or attempted to engage in tortious, criminal, and/or unlawful activity related to the events of September 27, 2013." Compl. Ex. C at 3. Plaintiff acknowledged in the agreement that he "did and does not desire to criminally prosecute" Defendant and understood that the agreement would "operate as a civil compromise of any/all criminal charges related to the alleged events of September 27, 2013." Compl. Ex. C at 4. Plaintiff also agreed to refrain from testifying that he has any basis for any civil or criminal action against Bean related to the September 27, 2013, incident. Compl. Ex. C at 2-3.

In exchange for the release of Plaintiff's remaining claims, Defendant paid Plaintiff $200,000. Compl. Ex. C at 2. Again, the agreement is signed and dated by Plaintiff and his guardian, but Plaintiff alleges that he and his guardian did not authorize the negotiations for or sign the Second Settlement Agreement and that Deveny forged their signatures. Compl. ¶ 15. In March 2016, Deveny disbursed $5,000 of the settlement proceeds to Plaintiff. Compl. ¶ 16. Plaintiff was unable to obtain the rest of the settlement funds from Deveny. *Id*.

On March 5, 2019, Plaintiff filed this action in federal court, seeking declaratory relief and damages. Count One of Plaintiff's claim for declaratory relief under Or. Rev. Stat. ("O.R.S.") § 28.010 alleges that the First and Second Settlement Agreements were obtained through Defendant's misrepresentation, fraudulent inducement, and concealment of their true unlawful purpose and that they should be rescinded. Compl. ¶¶ 23-24. Count Two of Plaintiff's

claim for declaratory relief asks the court to declare the First and Second Settlement Agreements void as a violation of public policy. Compl. ¶¶ 25-27. Specifically, Plaintiff alleges that the purpose of the First Settlement Agreement was to secrete Plaintiff from the prosecutor, compel Plaintiff's disobedience with a criminal subpoena, and bribe Plaintiff into refusing to testify at Defendant's criminal trial. Compl. ¶ 26. The Second Settlement Agreement, according to Plaintiff, was intended to compensate Plaintiff for his participation in the First Settlement Agreement and disguise the exchange of money and crime of bribing a witness. Compl. ¶ 27. Consequently, Plaintiff seeks a declaratory judgment that the settlement agreements are void as a matter of public policy and are unenforceable. *Id*.

## STANDARDS

"A SLAPP suit is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). In response to a SLAPP suit, a defendant in federal court may file a motion to strike under an applicable anti-SLAPP statute. *Vineyard v. Soto*, No. 10-CV-1481-SI, 2011 WL 5358659, at *2 (D. Or. Nov. 7, 2011); *see also Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005). The purpose of Oregon's anti-SLAPP statute was to "provide an inexpensive and quick process by which claims that might infringe on the right to petition and free speech on public issues could be evaluated to determine if they [are] frivolous." *Page v. Parsons*, 249 Or. App. 445, 461, 277 P.3d 609 (2012).

Oregon's anti-SLAPP provisions "permit a defendant who is sued over certain actions taken in the public arena to have a questionable case dismissed at an early stage." *Staten v. Steel*, 222 Or. App. 17, 27, 191 P.3d 778, 786 (2008). A special motion to strike is treated "as a

motion to dismiss under Or. R. Civ. P. 21A and requires the court to enter a 'judgment of dismissal without prejudice' if the motion is granted." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) (applying Oregon law). If the Court denies the motion, the Court must enter a limited judgment denying the motion. ORS 31.150(1); *Schwern v. Plunkett*, 845 F.3d 1241, 1244-45 (9th Cir. 2017).

Analysis of a special motion to strike is a two-step process. "First, the defendant has the initial burden to show that the challenged statement is within one of the categories of civil actions described in [ORS] 31.150(2)." *Id.*; *see also* ORS 31.150(3). To fall within one of those categories, "the act underlying the claim itself must have been an act in furtherance of the right to petition and not just associated with it." *Deep Photonics Corp. v. LaChappelle*, 282 Or. App. 533, 546, 385 P.3d 1126, 1134 (2016) (citation omitted). In deciding the motion, the Court will consider the pleadings and supporting and opposing affidavits, but the required showing can be made on the basis of the pleadings alone. *Vineyard*, 2011 WL 5358659, at *2 (citing *Staten*, 222 Or. App. at 29, 31).

"If the defendant meets the initial burden, the burden shifts to the plaintiff to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Gardner*, 563 F.3d at 986 (quoting ORS 31.150(3)). To determine whether the plaintiff has met that burden, the Court must take the facts from the pleadings and from the supporting and opposing affidavits, ORS 31.150(4), and state them "in the light most favorable to plaintiffs." *Mullen v. Meredith Corp.*, 271 Or. App. 698, 702, 353 P.3d 598 (2015) (quotation omitted). The court must deny the motion "[i]f the plaintiff meets this burden." ORS 31.150(3).

Oregon courts have looked to California case law to construe Oregon's anti-SLAPP statute because Oregon's law was "modeled on California statutes" and '[i]t was intended that California case law would inform Oregon courts regarding the application of ORS 31.150 to ORS 31.155." *Page v. Parsons*, 249 Or. App. at 461 (discussing the Oregon anti-SLAPP statute's legislative history). However, California cases published after Oregon enacted its anti-SLAPP statute in 2001 are "relevant, at most, only for their persuasive value." *Handy v. Lane Cty.*, 360 Or. 605, 623 n. 12, 385 P.3d 1016, 1023 (2016).

## DISCUSSION

ORS 31.150 provides that a defendant may make a special motion to strike against a claim in a civil action that "arises out of":

(a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

(b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

(c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

ORS 31.150(2) ("the anti-SLAPP statute"). At issue in this case is whether the conduct surrounding the execution of the First and Second Settlement Agreements falls within the petitioning activity described in Subsection (2)(b).[2]

---

[2] Defendant's motion to strike also indicates that Subsection (2)(d) is "relevant" to this case. Def. Mot. 12-13. However, Defendant's argument is limited to Subsection (2)(b). Def. Mot. 19 n. 2 (referring to Subsection (2)(d) as a "different subsection" than the one at issue here).

Defendant argues that Counts One and Two of Plaintiff's Complaint should be dismissed under the anti-SLAPP statute because the conduct alleged by Plaintiff is Defendant's "act of settling a case." Def. Mot. 18. The Court disagrees. To determine whether the relevant conduct falls within Subsection (2)(b), the Court should "assess more generally what sort of claim this is." *Mullen*, 271 Or. App. at 705.

Plaintiff's claims concerning the settlement agreements are two-fold. First, in Count One, Plaintiff alleges that the two settlement agreements should be rescinded because they are the product of Defendant's fraudulent inducement, misrepresentation, and concealment of the true purpose of the agreements, which was to bribe Plaintiff to prevent him from testifying against Defendant in Defendant's criminal trial and to compensate Plaintiff for refusing to testify. Second, in Count Two, Plaintiff seeks a judgment declaring that the settlement agreements are void as a matter of public policy because they constitute the crimes of bribery or witness tampering.

Because of the nature of the conduct involved, actions to determine the validity and terms of a contract generally do not arise out of protected petitioning or free speech activities. *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1192-93 (9th Cir. 2017) (California's anti-SLAPP statute does not apply to a claim for breach of an implied-in-fact contract because the relevant conduct was defendant's failure to pay); *Fourth Age Ltd. v. Warner Bros. Entm't, Inc.*, 621 F. App'x 465 (2015) (mem.) (routine breach of contract claims lack "the hallmark characteristics of SLAPP suits"). *But cf. Hilton v. Hallmark Cards*, 599 F.3d 894, 905 (2010) (noting that nothing in the text of California's similar anti-SLAPP statute categorically excludes any specific cause of action). That is because it is the defendant's conduct that drives the inquiry, not the nature of the cause of action. *Id*. at 905.

The central question is whether the Defendant's conduct was an exercise of the constitutionally-protected rights to petition the government for redress or free speech that the Oregon legislature intended to protect from "frivolous threatening lawsuits that attempt to disenfranchise citizens . . . from participating in our government." *Staten*, 222 Or. App. at 30 (quoting Oregon anti-SLAPP statute's legislative history). None of the pleadings or affidavits filed in this case demonstrate that it falls within the class of cases for which the Oregon legislature intended to provide the defendant a mechanism for early dismissal when it enacted the anti-SLAPP statute. *Id.* at 50.

Relying on California cases interpreting its similar anti-SLAPP statute, Defendant urges the Court to find that the conduct alleged in the Complaint falls within Subsection (2)(b) because the alleged conduct was in anticipation of litigation. In *Deep Photonics*, the Oregon Court of Appeals specifically declined to decide whether the anti-SLAPP statute protects statements made in anticipation of future litigation. *Deep Photonics*, 282 Or. App. at 544. This Court declines to do so in the first instance and instead relies on the guidance that the Oregon appellate courts have provided.

When applying the anti-SLAPP statute, Oregon's appellate courts consistently have relied on its plain meaning. *Handy*, 360 Or. at 617-18 (also examining context and legislative history); *Baldwin v. Seida*, 297 Or. App. 67, 72-73, 441 P.3d 720 (2019); *Mullen*, 271 Or. App. at 704-05; *Young v. Davis*, 259 Or. App. 497, 507-08, 314 P.3d 350 (2013); *Page*, 249 Or. App. at 459-60. In doing so, Oregon appellate courts have never held that the anti-SLAPP statute covers conduct that occurred before or after an issue was "under consideration or review . . . by a . . . judicial body." The Oregon Court of Appeals held that Subsection (2)(b):

> plainly covers statements made or documents submitted in connection with a case after it comes 'under consideration' by a court, such as, for example, pleadings filed

with a court or statements made by an attorney or a witness at a hearing. What is not so clear from the plain text is what, if any, conduct it covers that occurs before an issue becomes 'under consideration' by a court.

*Deep Photonics*, 282 Or. App. at 543-44.

The Oregon Court of Appeals recently addressed the question of whether writs of garnishment are documents "submitted" in a "judicial proceeding" under Subsection (2)(a) or "in connection with an issue under consideration or review by a . . . judicial body" under Subsection (2)(b) of the anti-SLAPP statute. Relying on its plain meaning, the Court of Appeals held that the phrase "judicial proceeding" in subsection (2)(a) means "a court proceeding or a proceeding initiated to procure an order, decree, judgment or similar action." *Baldwin*, 297 Or. App. at 74. Although the case turned on the fact that writs of garnishment are not "submitted" to courts under Subsections (2)(a) and (b), the court emphasized that "nothing in the record [indicated] that the writs were submitted in connection with an issue that was 'under consideration or review by a judicial body' *at the time they were issued* . . . ." *Id.* at 76-77 (emphasis added).

With those principles in mind, the Court turns to the conduct alleged in Counts One and Two of Plaintiff's Complaint.

I.  **Count One of Plaintiff's Complaint**

The conduct alleged in Count One includes statements made by Defendant during negotiations of the settlement agreements that occurred before Plaintiff had initiated any civil litigation against Defendant. Compl. ¶ 11. The conduct alleged in Count One is not Defendant's act of settling of Plaintiff's civil claims, as Defendant argues, it is Defendant's misrepresentations during the negotiations of those claims.

When Defendant negotiated the First Settlement Agreement before it was signed on July 20, 2015, the only "issue under consideration . . . by a judicial body" was the issue of Defendant's criminal liability. RJN Ex. 7. The conduct that Plaintiff alleges Defendant engaged

in during that timeframe—misrepresentations intended to fraudulently induce Plaintiff to enter into a settlement of his civil claims against Defendant—was "in connection with" Plaintiff's threatened civil claims, not in connection with Defendant's criminal case. Since Plaintiff's threatened civil claims had not yet become "under consideration . . . by a judicial body" when those statements were made, they are not protected by ORS 31.150(2)(b). *Cf. Baldwin*, 297 Or. App. at 77.

Similarly, during the negotiations of the Second Settlement Agreement before it was signed (or forged) on September 2, 2015, Defendant's criminal case was the only issue "under consideration . . . by a judicial body," ORS 31.150(2)(b), but the case was dismissed before the Second Settlement Agreement was signed. That agreement, like the First Settlement Agreement, concerned only Plaintiff's civil claims against Defendant. Thus, Plaintiff's claims regarding Defendant's misrepresentation, fraudulent inducement, and concealment of the true purpose of the Second Settlement Agreement relate to the "issue" of Defendant's civil liability and occurred before that issue became "under consideration . . . by a judicial body." As a result, the conduct alleged in Count One of Plaintiff's Complaint does not fall within ORS 31.150(2)(b).

## II. Count Two of Plaintiff's Complaint

Count Two of Plaintiff's Complaint alleges that the First and Second Settlement Agreements are void as a matter of public policy. The allegations in Count Two present a question of contract validity which does not depend on any statement made by Defendant. It simply asks the Court to determine whether the First and Second Settlement Agreements are void if they constitute the crime of bribery. Since that claim does not arise out of any statement made in connection with an issue under consideration by a judicial body, Count Two does not arise out

of the petitioning activity described in Subsection (2)(b).[3]  Accordingly, Defendant has failed to meet his burden to demonstrate that the allegations in Count Two of Plaintiff's Complaint arise out of conduct that falls within Subsection (2)(b) of the anti-SLAPP statute.

## CONCLUSION

The Court GRANTS Defendant's Unopposed Request for Judicial Notice [7] and DENIES Defendant's Special Motion to Strike [6].

IT IS SO ORDERED.

DATED: 11/25/19.

MARCO A. HERNÁNDEZ
United States District Judge

---

[3] Declaratory judgment actions to determine the validity of a contract or settlement agreement do not fall within California's anti-SLAPP statute, even under California's broader interpretation of its own anti-SLAPP statute. *City of Alhambra v. D'Ausilio*, 193 Cal. App. 4th 1301, 1307, 123 Cal. Rptr. 3d 142 (2011); *State Farm Gen. Ins. Co. v. Majorino*, 99 Cal. App. 4th 974, 978 (2002).

12 – OPINION & ORDER